UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEIL D. EMERY,

    Plaintiff,

v.

ANTHONY STEWART, Warden,
THOMAS COMBS, Chairman of Michigan
Parole Board, and DANIEL HEYNS,
M.D.O.C. Director,

    Defendants.

Case No. 14-11344

Hon. Patrick J. Duggan

## ORDER DISMISSING PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS

Petitioner Neil D. Emery, presently confined at the Ryan Correctional Facility, otherwise referred to as the Detroit Re-Entry Center, in Detroit, Michigan, has filed two *pro se* petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner also filed a petition to proceed *in forma pauperis*, which was granted by United States Magistrate Judge R. Steven Whalen. In both habeas petitions, Petitioner challenges the Michigan Parole Board's decision to require that he participate in a residential treatment program for substance abusers before he is eligible to be released from custody. After undertaking the review required by Rule 4 of the Rules Governing Section 2254 Cases, the Court concludes that the

grounds raised by Petitioner in both habeas applications are meritless, such that both petitions must be denied.

## I. BACKGROUND

In early 2011, Petitioner pled guilty to three narcotics charges, in violation of Michigan Compiled Laws § 333.7401, in state court. The state court, located in Roscommon County, Michigan, sentenced Petitioner on June 30, 2011 to a term of imprisonment for two-and-a-half to twenty years. Petitioner first became eligible for release on parole on November 23, 2013; on December 26, 2013, the Michigan Parole Board authorized Petitioner's release on parole, provided that he first complete a residential treatment program for substance abusers at the Detroit Re-Entry Center. Upon imposition of this condition, Petitioner was transferred to the Detroit Re-Entry Center, where he currently resides.

Petitioner's first habeas petition states that the Re-Entry Center has a higher level of security than the prison from which he was transferred and that parolees, parole violators, and level-two prisoners are not separated at the facility. He also alleges that the Re-Entry Center is essentially a prison and that he has no yard privileges, no job, and less food. Furthermore, Petitioner alleges that he has not yet started the 180-day substance abuse program he is required to complete as a condition of parole. Petitioner's grounds for relief are: (1) the Parole Board has deprived him of his right to liberty and due process of law by housing him in a

level-two prison without providing him with the programming that he must complete before he can be released; and (2) the Parole Board has subjected him to cruel and unusual punishment under the Eighth Amendment by holding him indefinitely with no indication of when he will be enrolled in the substance abuse program or released from prison. He seeks to have his conditions of parole modified and to be released from prison.

Petitioner filed a second habeas corpus petition on June 25, 2014. The second petition alleges that: (1) the Michigan Department of Corrections ("MDOC") violated 28 U.S.C. § 3621(b) and the Ex Post Facto Clause by retroactively applying a judicial decision and making community confinement in a level-two facility a requirement for release; (2) the MDOC violated the Eighth Amendment's prohibition against cruel and unusual punishment by intimidating and bullying Petitioner into signing a contract for placement at the Detroit Re-Entry Center; (3) the Director of the MDOC, Daniel Heyns, and Michigan Governor Rick Snyder violated 18 U.S.C. § 3621(b) by requiring community confinement in a level-two prison; and (4) Director Heyns and Governor Snyder violated the rulemaking provisions of the Administrative Procedures Act ("APA"), codified at 5 U.S.C. § 553.[1]

---

[1] The Court notes that Governor Snyder is not a party to this lawsuit.

## II.  GOVERNING LEGAL STANDARD

Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4 of the Rules Governing Section 2254 Cases;[2] 28 U.S.C. § 2243. If, after preliminary consideration, the Court determines that the petitioner is not entitled to relief, the Court must summarily dismiss the petition. Rule 4 of the Rules Governing Section 2254 Cases; 28 U.S.C. § 2243. A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).

## III.  ANALYSIS

### A.  Exhaustion of State Remedies

State prisoners are required to exhaust available state remedies before they present their claims to a federal court in a habeas corpus petition. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731

---

[2] Rule 1 of the Rules Governing Section 2254 Cases delineates the scope and applicability of the habeas corpus rules. Although habeas petitions filed pursuant to § 2241 are not expressly covered by subsection (a), subsection (b) of the rule provides that a "district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)." Rule 1(b) of the Rules Governing Section 2254 Cases.

(1999); *Nali v. Phillips*, 681 F.3d 837, 851 (6th Cir. 2012), *cert. denied*, __ U.S. __, 133 S. Ct. 535 (2012). This requirement is satisfied if a prisoner invokes "one complete round of the State's established appellate review process," including a petition for discretionary review in the state supreme court, "when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan*, 526 U.S. at 845, 847, at 119 S. Ct. at 1733. Thus, to be properly exhausted, each claim must have been fairly presented to the state court of appeals and to the state supreme court. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). While "exhaustion under § 2241 is not a statutory requirement . . . , 'decisional law has superimposed such a requirement in order to accommodate principles of federalism.'" *Phillips v. Ct. of Common Pleas, Hamilton Cnty., Ohio*, 668 F.3d 804, 810 n.4 (6th Cir. 2012) (quoting *United States ex rel. Scranton v. New York*, 532 F.2d 292, 294 (2d Cir. 1976)); *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006).

The petitions and corresponding exhibits demonstrate that Petitioner challenged the Parole Board's actions by filing a grievance. This grievance was denied because prison grievance procedures may not be used to appeal parole decisions. Petitioner also applied to the Parole Board for a commutation of his sentence, but his petition was denied. He claims that he has no other state remedy to exhaust. Petitioner is correct, as Michigan law does not permit a prisoner to appeal an adverse decision by the Michigan Parole Board. Mich. Comp. Laws §

791.234(11) (permitting crime victims and prosecutors to appeal the action of the parole board in granting parole); *Jackson v. Jamrog*, 411 F.3d 615, 617-18 (6th Cir. 2005) (discussing 1999 amendment to Michigan statute addressing parole and noting that "Michigan law no longer authorizes state court review of parole board decisions denying parole, while continuing to provide judicial review of the granting of parole[]"). Because Michigan law explicitly forecloses Petitioner's ability to challenge the actions of the Parole Board, there is no "established appellate review process" for him to invoke. *O'Sullivan*, 526 U.S. at 845, 847, at 119 S. Ct. at 1733. Given this "absence of available State corrective process[es,]" Petitioner's failure to exhaust prior to filing the instant habeas action is excusable. 28 U.S.C. § 2254(b)(1)(B)(i).

Further, even if this Court was able to conclude that Petitioner failed to exhaust his state court remedies, an unexhausted claim may be addressed if without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Matthews v. Abramajtys*, 92 F. Supp. 2d 615, 628 (E.D. Mich. 2000), *aff'd in part, rev'd on other grounds*, 319 F.3d 780 (6th Cir. 2003); *cf.* 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies).

Accordingly, the Court now turns to the merits of Petitioner's claims.

6

B.  **Merits of Claims Presented**

Petitioner is not entitled to relief in this federal habeas corpus action as not a single claim sets forth a legal theory cognizable on federal habeas review. "Congress's general grant of habeas authority to the federal courts appears in 28 U.S.C. § 2241, which extends the writ to, among others, persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Phillips*, 668 F.3d at 809 (quoting 28 U.S.C. § 2241(c)(3)).

As an initial matter, to the extent that Petitioner challenges his conditions of confinement, such as his lack of yard privileges and employment opportunities or the fact that parolees are not separated from parole violators, such claims are not cognizable on habeas review as there is no federal law or constitutional mandate that such conditions exist.  In other words, these conditions do not implicate the legality of Petitioner's confinement, and are therefore not pertinent to the Court's analysis.

Of greater import, the Due Process Clause of the Fourteenth Amendment does not, of its own force, "guarantee an inmate a right to parole." *Marshall v. Mitchell*, 57 F.3d 671, 672 (8th Cir. 1995).  Indeed, the Supreme Court of the United States has definitively held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S.

1, 7, 99 S. Ct. 2100, 2104 (1979); *Gavin v. Wells*, 914 F. 2d 97, 98 (6th Cir. 1990). Prisoners also have no constitutional right to rehabilitative programs or to placement in any particular institution within a state prison system even if a transfer subjects the prisoner to substantially less favorable conditions. *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 279 n.9 (1976) (citation omitted).

Although the Due Process Clause does not independently protect a "life, liberty, or property" interest in release on parole, the Supreme Court has held that a convicted person may have a liberty interest created by a State's laws. *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908 (1989) (citation omitted). If State law creates such an interest, the Due Process Clause protects against unjustified interferences with that interest. In making the determination of whether a liberty interest arises under the laws of a State such that the interest is protected by the Fourteenth Amendment's Due Process Clause, the Supreme Court closely examines the language of the State's relevant statutes and regulations. *Id.* at 461, 109 S. Ct. at 1909. "Stated simply," the *Thompson* Court explained, "a State creates a protected liberty interest by placing substantive limitations on official discretion." *Id.* at 462, 109 S. Ct. at 1909 (internal quotation marks and quotation omitted).

It is now well-established that because the Michigan Parole Board has broad discretion in determining whether or not to grant parole, a prisoner does not have a

protected liberty interest in being paroled prior to the expiration of his or her sentence. *See, e.g.*, *Johnson v. Renico*, 314 F. Supp. 2d 700, 713 (E.D. Mich. 2004); Mich. Comp. Laws § 791.234(11) ("[A] prisoner's release on parole is discretionary with the parole board."). Because Petitioner has multiple years remaining on his sentence, he has no right to be released from custody even though the Michigan Parole Board has indicated that upon completion of the substance abuse program at the Detroit Re-Entry Center, Petitioner may return to the community. In other words, because Petitioner has no State-created liberty interest in being released on parole, he is unable to show that his continued incarceration pending successful completion of the substance abuse program is in derogation of his federal constitutional or statutory rights. Petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke the protections of the Due Process Clause. Put another way, because there was no deprivation of a protected liberty interest, Petitioner's due process claims lack merit.

Petitioner's Eighth Amendment claims fare no better than his due process claims because Petitioner has failed to show that he is being subjected to "wanton and unnecessary infliction of pain," or that the challenged conduct was "grossly disproportionate to the severity of the crime warranting imprisonment[,]" as determined by contemporary standards of decency. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981). Requiring Petitioner to participate in

substance abuse treatment as a prerequisite to release on parole is neither impermissibly restrictive nor even harsh. *Id.* Petitioner alleges he was coerced into signing an agreement for treatment at the Detroit Re-Entry Center by officials who indicated if he did not sign, his parole would be revoked. Such allegations, even if true, clearly do not fall within the purview of the Eighth Amendment's prohibition against "cruel and unusual punishments[.]" U.S. Const. amend. VIII.

To the extent that Petitioner is endeavoring to state a claim under the Constitution's Ex Post Facto Clause, U.S. Const. Art. I, § 10, cl. 1, this claim also fails. Petitioner argues that MDOC retroactively applied a judicial decision that had the effect of prolonging his imprisonment "past the period intended by my sentencing judge by ignoring the settled sentence to impose a[n] undetermined length of time post parole." This argument defies logic, as the sentencing judge imposed a sentence of two-and-a-half to twenty years on June 30, 2011. Thus, it is simply beyond credence to suggest that Petitioner's sentence has somehow been impermissibly extended. More consequentially, retroactive applications of parole guidelines or Parole Board policies do not implicate the Ex Post Facto Clause. In *Collins v. Youngblood*, 497 U.S. 37, 110 S. Ct. 2715 (1990), the Supreme Court explained that the Ex Post Facto Clause of the Constitution incorporated "a term of art with an established meaning at the time of the framing of the Constitution." *Id.* at 41, 110 S. Ct. at 2719. Using this interpretation as a guide, the Court held that

10

the Clause targets laws that "retroactively alter the definition of crimes or increase the punishment for the criminal act." *Id.* at 43, 110 S. Ct. at 2719 (ciations omitted). Thus, to fall within the ex post facto prohibition, a law "must apply to events occurring before its enactment" and it "must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29, 101 S. Ct. 960, 964 (1981). The Supreme Court has indeed noted that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." *Garner v. Jones*, 529 U.S. 244, 250, 120 S. Ct. 1362, 1367 (2000). It does not follow, however, that every retroactive change in parole laws constitutes an ex post facto violation. In fact, the Supreme Court previously observed that "the Ex Post Facto Clause should not be employed for 'the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures.' . . . The States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Id.* at 252, 120 S. Ct. at 1368 (quotation omitted). The controlling inquiry is therefore "whether retroactive application of the change in . . . law created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Id.* at 250, 120 S. Ct. at 1367 (quotation omitted).

    Here, Petitioner does not point to any retroactive change in the law, but rather to an allegedly retroactive change in how the Parole Board chooses to exercise its

discretion.  The imposition of a requirement that Petitioner complete substance abuse treatment as a condition of release from incarceration – incarceration directly related to Petitioner's commission of several narcotics-related offenses – does not increase the measure of punishment attached to Petitioner's crime, as the state trial judge specifically authorized a term of incarceration up to twenty years.  In short, that the Parole Board, in the exercise of its rather significant discretion, believed that completion of substance abuse treatment would impact Petitioner's suitability for parole is unrelated to whether Petitioner is being detained in violation of the Constitution or federal law.  Petitioner's ex post facto claim lacks merit.

Lastly, the Court rejects Petitioner's claims under 18 U.S.C. § 3621(b) (place of imprisonment) and 5 U.S.C. § 553 (rulemaking), because those provisions of federal law do not pertain to state prisoners.  To the extent that Petitioner's reference to the Parole Board's violation of the APA is in actuality a reference to Michigan's Administrative Procedures Act, not the federal corollary, such a claim is not cognizable.  A state agency's failure to abide by its own policies or procedures does not amount to a constitutional violation.  *Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005).

## IV.   CONCLUSION AND ORDER

For the reasons stated herein, the Court concludes that both habeas applications fail to state viable claims under federal constitutional or statutory law and that both are therefore subject to summary dismissal.

Accordingly,

**IT IS ORDERED** that the petitions for writ of habeas corpus (ECF Nos. 1, 5) are **DISMISSED**.

Dated: October 7, 2014

                                          s/PATRICK J. DUGGAN
                                          UNITED STATES DISTRICT JUDGE

Copies to:

**Neil Emery**, # 443938
Ryan Correctional Facility
17600 Ryan Road
Detroit, MI 48212